May it please the Court, Mason Morissette, attorney for the Gwich'in Tribe, plaintiff and appellate herein. I'd like to acknowledge the presence in the courtroom of two members of the Tribal Council, the governing body of the Tribe, who have come all the way from Yuma to be here today. I appreciate that. I'd like to reserve about four minutes for you to keep track of your time and count down. We'll do so. Thank you, sir. We appear before the Court today on an appeal of a district court decision which is remarkable for its failure to recognize what we all thought were the simplest and most straightforward Indian law questions concerning the status of tribes, the special relationship they have to the tribe, and how to give them special care. Specifically, we're dealing with the Congress directives in the Indian Health Care Improvement Act that the government should, quote, ensure the highest possible health status for Indians and ensure quality health care for all Tribal members. The district court here said this doesn't mean anything. It means nothing. There is no standard of care. There is no affirmative duty on the United States as a fiduciary or guardian nor a duty under the statute to do anything when it comes to health care. There are various ways of characterizing the trust relationship between the United States government and recognized Indian tribes, and it means different things in different contexts. So sometimes it's a straightforward trust relationship with the United States actually holding property for the tribe. Sometimes it's the more general trust relationship that obliges the United States as a moral obligation to pass statutes implementing it. Sometimes it is a method of interpreting statutes so that we presume that the trust relationship is furthered and so on. But as I understand the law, the trust relationship of itself is not enough to create a judicially enforceable obligation. You need to find a statute. Am I wrong? I don't agree with that statement, Your Honor. Sorry? I don't agree with that statement. Okay. How am I wrong? And that is said sometimes, but the first of all, we're not relying totally on the trust relationship here. Okay. We're relying on two statutes. But suppose they were gone, we would still rely on the trust relationship as rising to an affirmative duty of the government to provide for Indians. And I think some of the cases that we cite provide for that idea. And that it is true there are many cases that say we need to find a specific statute with specific language, but I think it was the Court of Claims' decision, I apologize for that, but it informs us that if you have to find a statute that spells out specifically the trust duty, then it's no duty at all. There's no fiduciary duty at all, because presumably the United States has to carry out the words of a statute, the demands of a statute. If Congress says do this, they have to do it, and that's not the trust responsibility, that's just following the words of the statute. And it is the words of the statutes involved here that we heavily rely on, including the quote that I just made, that there's a duty to ensure the highest possible health care for tribes. There's similar language in the Snyder Act, which is an old act that goes way back to outlining the first duties of the United States to Indians, and which through the years has been construed, as we point out in our briefing, to impose a trust responsibility on the government. We cite to you the Blue Legs case, again out of the Eighth Circuit, but a case that I think informs us that finds obligations in both the Snyder Act and the Blue Legs case, and the Indian Health Care Act, that the highest possible health status must be found. Mr. Morissette, do you limit your request for relief here to declaratory relief? I'm sorry, Your Honor? Do you limit your request in this case for relief to declaratory relief? We ask for declaratory relief and for a hearing to request the district court set some standards, objective standards, that the IHS would have to meet in providing health care. That's the big problem here. You want the district court to set standards, not this court? No, not this court. We need a hearing about that. We need, as you have said, Your Honor, a trial to explore these things, and there's a lot out there that if we could proceed to trial, we could request that the district court hold the IHS to these standards. The Center for Disease Control has a whole set of standards about sterilization of instruments, which was a big problem here, the exposure event, when the IHS used instruments non-sterilized that had been used on people who tested HIV positive. We'd like to see those standards adopted and directed by the court to IHS so that they have to do something. What's your best case? Leaving aside the question of declaratory relief for a moment, which is always discretionary on a federal court, what's your best case? And leaving aside whether you have a cognizable claim at all, a statutory claim or a constitutional claim, what's your best case for the notion that a federal appellate court can order a federal trial court to create standards under circumstances such as those presented here? That's pretty far-reaching, isn't it? It is somewhat far-reaching, but when you read the cases that we've cited, you'll see the courts have generally at least gone so far to say to whatever agency it is, and sometimes it's the Bureau of Indian Affairs, sometimes it's some other agency, what you did is wrong and did not meet the statutory demands to provide health care or other actions, and you've got to do better, and we declare that you did it wrong. And we think that the court could go further and hold hearings on what the standards should be, since the problem here is IHS says, we don't have to do anything. And the district court said, that's right, you don't have to do anything. Has the State also said that? Sorry? Has the State also said that? The State? I'm thinking of the McNabb case, which you're familiar with, and that hints my question. Is this a situation where the tribe is betwixt and between the State and the Federal Government? From the briefing, it seems to me that the Federal Government's position is that the Federal Government alone doesn't have to provide this service. I'm not sure. If I understand your question, Your Honor, are you saying that here the Federal Government is saying the State has to provide medical service? Just looking to the McNabb case. Yeah. Are you familiar with the McNabb case? Right. Where the problem was nobody was providing the service. The State had refused to provide the service. Right. Is there any comparable analogy here? None that I know of, Your Honor. I mean, the service unit is for the Koshan Reservation and the Kokopah Reservation, which is just a little bit to the south and east, and it is the center for those two reservations and any Indian who needs health care. An Indian from somewhere else could show up and ask to be served there, and they would be welcomed. I don't know that there's been any interplay between, well, can't the State do this somehow? I don't know how they do it. I don't see it anywhere in the record either, hence my question because of the McNabb precedent. But then getting back to your position, your paraphrasing was that the IHS had said it didn't have to provide this service. What's your best case that they do? That they have to provide the service? I think they do. What's your strongest argument? I think McNabb stands for that proposition. I think that the case I just cited, Duncan, which is an Eighth Circuit case, stands for that proposition. I think Rincon that dealt with garbage dumps, which isn't quite where we are, stands for the proposition that BIA has responsibility, interestingly enough, under the Snyder Act to take actions that will protect the tribe. And I think that line of cases from this Court stand for that proposition, Your Honor. Does the 28J submission affect your argument at all here, the most recent submission from the government? You mean the subsequent authority?  Letter? Thank you, Your Honor, because I have to talk to that. This is not subsequent authority, but that's all right. Well, it's subsequent information. It's hearsay, and it's the worst kind of hearsay. It's newspaper hearsay. We don't know if the reporter got it right, and I'm going to give them the benefit of the doubt, because I think I know who this is, that they tried to be accurate. We don't know who is saying these things. We don't know if they were understood. We don't know if who was saying them has it right. We don't know if any of this will happen. And I hate to have to report to the quichons that, don't worry, there was an article in the newspaper that said this is all okay. And that only goes to the construction, not to the poor care. We do know, so the record is clear, on December 16, 2014, President Obama signed the Consolidated and Further Appropriation Act, more continuation of the Congress trying to appropriate, Public Law 113-235, there was a budget request in that act for $460 million for the Indian Health Service. It is not a line item for this facility in the Appropriation Act. There may be one in the budget request, but budget requests sometimes go astray, sometimes don't get carried out. And as we understand it, the budget request was for $46 million, and according to the newspaper article, we're down to $29 million already, $17 million have already evaporated. I'm worried about where they're going to go from there. And I'm out of time, Your Honor. Okay, let's hear from the United States, and you've saved some time. May it please the Court, I'll begin where the Court and my friend on the other side left off, provided the newspaper article, because I wanted to find a public record source. Do you just like to send newspaper articles? We can't take judicial notice of this, can we? Well, I sent the newspaper article because it was a matter of public record. What I'm more than happy to do to you is to find a public record source. Wait a minute. You say it's a matter of public record. It is a newspaper article. Yes, Your Honor. When you say public record, are you saying we can take judicial notice of it? That's right, Your Honor. Pardon me?   No, Your Honor. I'm not suggesting that it's incapable of dispute. Just thinking of all the things the newspaper says about us. Or about us, Your Honor. I'm not suggesting that at all. The — and I'm — What are you suggesting, then? What I was attempting to do, Your Honor, was to, as the letter said, was to bring the Court up to date. It was the — I could — I was reluctant to provide the letters that had been sent to the presidents of the tribes describing the appropriations because those — that would have required a supplementing the record. Now, I'm more than happy to do that. I didn't want to do that on the eve of argument. I'm sorry if the Court feels that sending in a newspaper article was inappropriate. What — Well, I'm not sure I want to flat-out say it's inappropriate, but I do want to say this is not something that I believe — I'm not consulted with my colleagues on this point — that I can take judicial notice of. We never take judicial notice of newspaper articles for the truth of the matter they're in. I apologize, Your Honor. And I'm not what I'm — and as I say, what I would be more than happy to do is to supplement the record if the Court would find that useful. Well, why can you supplement the record on appeal? We don't allow supplementing the record on appeal except through matters of judicial notice. Yes, Your Honor. It was — I became aware of this at the end of last week. And I apologize if I didn't think through — But it was just sending it to us. Your Honor, my choice at that point was — and I don't want to make my conduct the center of this argument. Of course. The — but what I did want the Court to know, however inartfully I have gone about presenting it, what I wanted the Court to know is that there has, in fact, been movement in this area. I don't think it's illegally dispositive of anything because I think that the district court got it 100 percent right. However, I do think that there is a possibility, and it may be that counsel's view is that this case will never become moot because even if a new facility is constructed, that there will still be, in counsel's view, a claim. So again, to the extent that the Court wishes additional information, we're more than happy to provide it. But the real sort of legal point of this case is that it is governed by Lincoln v. Vigil and Norton v. Southern Utah Wilderness Association. The same three sources, the Snyder Act, the Indian Health Care Improvement Act, the trust relationship, were all cited in Lincoln v. Vigil. And it was a case in which a service to handicapped children was being discontinued. And so the direct services that had been provided were no longer going to be provided. And the Supreme Court unanimously, per Justice Souter, said, no, this is committed to agency discretion. There is no judicial review. The Court specifically noted the trust relationship, said that whatever the trust relation, whatever the scope of that, for purposes of looking to the creation of rights, it was not going to apply to the decision on how to allocate a lump sum. The argument here is that rather than take money in the past – that rather than take what are concededly limited congressional appropriations, and it's a lump sum so if it's going to go to one facility, it's not going to go to another facility. So you're going to take from Peter to pay Paul. That's the way that this works. The Snyder Act says gives no more authority than to spend money that from time to time may be appropriated. There is no allegation that any funds have been spent for purposes other than those contemplated by the Snyder Act and the Indian Health Care Improvement Act. District Court was governed by Supreme Court authority and by this Court's cases that are entirely in keeping with those two Supreme Court decisions. I'm happy to take any questions that the Court may have. Any questions from the bench? Okay. Thank you very much. Mr. Marci, you've saved some time. Thank you, Your Honor. I'll just be real brief. We briefed the Lincoln case in our reply brief at pages 19, 20, 21, 22. I just want to point out that it is Supreme Court precedent, but that dealt with reallocating all the funds for a regional program to the national program, did not deal with anything nearly as specific as we have here that is providing quality care. And I want to underscore that a major issue in this case beyond the facility, which is terrible, was the total failure to provide a minimum standard of care using unsterilized instruments on the Quachon people was devastating to them. It's hard to be able to convey the emotion that this had on the reservation. But this kind of thing has got to stop. There's got to be some standards for them to follow. Okay. Thank you very much for your arguments, both sides. Quachon Tribe of Fort Yuma v. United States now submitted for decision.
judges: Davis, Fletcher, Christen